UNITED STATES of America,
Plaintiff-Appellee,

v.

Ronald Joseph KURKA,
Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

David Lee COMBS,
Defendant-Appellant.

Nos. 86–3064, 86–3065.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 4, 1986.

Decided June 3, 1987.

Marianne D. Bachers, Eugene, Or., and
Kenneth Lerner, Portland, Or., for defend-
ant-appellant Kurka.

Michael V. Phillips, Eugene, Or., for defendant-appellant Combs.

James L. Sutherland, Eugene, Or., for plaintiff-appellee.

Before ANDERSON, HUG and CANBY, Circuit Judges.

HUG, Circuit Judge:

Appellant Combs was convicted, under criminal statute 18 U.S.C. § 33 (1982), of having damaged, with reckless disregard for the safety of human life, a motor vehicle in interstate commerce. Appellant Kurka was convicted, under 18 U.S.C. § 2 (1982), of having aided and abetted Combs in violating 18 U.S.C. § 33. The dispositive issue presented on appeal is whether "willful" damage to motor vehicles is an essential element of the crime proscribed by 18 U.S.C. § 33. The indictment did not charge that the damage to the vehicle had been done willfully, and the instructions to the jury did not require such a finding in order to convict the defendants. We hold that willful damage to a motor vehicle is an essential element of the crime proscribed by 18 U.S.C. § 33 and, therefore, we reverse the judgment of conviction for both defendants.

## I. FACTS

The evidence presented by the Government was that Kurka and Combs, after a beer party, followed a bus carrying passengers in interstate commerce. Kurka was the driver and Combs was the passenger in Kurka's pickup truck. Combs took a rifle from the gun rack of the truck and fired the rifle at the bus on two separate occasions, hitting the bus both times.

The Government introduced convincing evidence that Combs had shot at the bus and, with Kurka's aid, damaged it willfully. However, it is fatal to a conviction if all of the elements of a crime have not been charged and the jury instructed on those elements, regardless of the proof adduced. Thus, if "willful" damage to the vehicle is

an essential element of the crime, then it was essential that both the indictment and the jury instructions included that element.

## II. INTERPRETATION OF 18 U.S.C. § 33

On September 11, 1985, a grand jury indicted Kurka and Combs under 18 U.S.C. §§ 33 and 2. 18 U.S.C. § 33 states, in pertinent part:

### Destruction of Motor Vehicles or Motor Vehicle Facilities

Whoever willfully, with intent to endanger the safety of any person on board or anyone who he believes will board the same, or with a reckless disregard for the safety of human life, damages, disables, destroys, tampers with ... any motor vehicle which is used, operated, or employed in interstate or foreign commerce ... shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.

The indictment read as follows:

On or about August 6, 1984, in the District of Oregon, RONALD JOSEPH KURKA and DAVID LEE COMBS defendants herein, did, with a reckless disregard for the safety of human life, damage a motor vehicle, that is, a bus of the Greyhound Corporation, then being used, operated, and employed in interstate commerce from Portland, Oregon to San Francisco, California by firing two rifle shots at said bus; all in violation of Title 18, United States Code, Sections 33 and 2.

The above indictment omits the word "willfully." The appellants moved to dismiss the indictment on the ground that it failed to allege that the damage to the bus was inflicted willfully. The motion was denied. The jury instructions given by the district judge also omitted the element of willfulness.

The question presented is whether a person can be convicted under the statute, if he, with reckless disregard for the safety of human life, has merely damaged a motor vehicle, or whether he, with reckless dis-

regard for the safety of human life, must have *willfully* damaged a motor vehicle. No cases have been called to our attention that discuss that issue, nor have we discovered any.

## A. *Language of the Statute*

We first look to the actual language used and the grammatical construction of the statute.

### 1. *Magistrate's Interpretation*

The recommendation of the magistrate, which was adopted by the district court in denying the motion to dismiss, stated:

> The indictment charges that the defendants acted with reckless disregard for the safety of human life and therefore sufficiently charges a violation of 18 U.S.C. § 33. In fact, a willful action and a reckless action seem inconsistent by definition. Defendant's motion to dismiss ... should be denied.

The two mental states are not inconsistent, however, because the willful intent relates to the damage to the vehicle, and the recklessness relates to the risk to human life. It is not at all inconsistent for Congress to have required a willful intent to damage the vehicle before an act that damages a motor vehicle and recklessly endangers human life can be punished by 20 years in prison.

### 2. *Appellants' Interpretation*

This interpretation of the statute can be more readily seen by the insertion of brackets:

> Whoever willfully, (with the intent to endanger the safety of any person on board or anyone he believes will board the same, or with a reckless disregard for the safety of human life,) damages ... any motor vehicle which is used, operated, or employed in interstate or foreign commerce....

Under this interpretation of the statute, which is urged by the appellants, a person would violate the statute if (1) he willfully damaged a vehicle in interstate commerce with the intent to endanger the safety of any person on board or anyone who he believes will be on board; or (2) if he willfully damaged a vehicle in interstate commerce with a reckless disregard for human life. Thus, the Government would have to prove, first, that he willfully damaged the vehicle, and also prove that he either intentionally endangered persons on board or had a reckless disregard for the safety of human life.

### 3. *Government's Interpretation*

The Government reads the statute as follows:

> Whoever (willfully, with the intent to endanger the safety of any person on board or anyone he believes will board the same,) or (with a reckless disregard for the safety of human life,) damages ... any motor vehicle which is used, operated, or employed in interstate commerce....

The Government in its brief seems to argue at one point that the word "willfully" modifies "endanger the safety of any person ..." and thus is merely a redundant expression of the intent to endanger the safety of any such person. Grammatically, this construction is not possible. If "willfully" were to modify "endanger" it would have to provide "willfully ... endangers."

Therefore, the only way that the statute could be read grammatically, as bracketed above, is with "willfully" modifying the damage to the vehicle. Under this construction, the first clause, which would require an actual intent to endanger the safety of those on board, would also require "willful" damage to the vehicle; whereas, the second clause, which requires only a reckless disregard for human life, would require only damage to the vehicle and not "willful" damage. This would be a most peculiar result, where the greater threat to human life, "intent," would require willful damage to the vehicle, and the lesser threat to human life, "reckless," would require only damage to the vehicle and not "willful" damage.

An examination of the symmetry of section 33 makes it apparent that the Government's interpretation was not the intended

construction of the statute. Section 33 is set forth in full as follows:

### § 33. Destruction of motor vehicles or motor vehicle facilities

Whoever willfully, with intent to endanger the safety of any person on board or anyone who he believes will board the same, or with a reckless disregard for the safety of human life, damages, disables, destroys, tampers with, or places or causes to be placed any explosive or other destructive substance in, upon, or in proximity to, any motor vehicle which is used, operated, or employed in interstate or foreign commerce, or its cargo or material used or intended to be used in connection with its operation; or

Whoever willfully, with like intent, damages, disables, destroys, sets fire to, tampers with, or places or causes to be placed any explosive or other destructive substance in, upon, or in proximity to any garage, terminal, structure, supply, or facility used in the operation of, or in support of the operation of, motor vehicles engaged in interstate or foreign commerce or otherwise makes or causes such property to be made unworkable, unusable, or hazardous to work or use; or

Whoever, with like intent, willfully disables or incapacitates any driver or person employed in connection with the operation or maintenance of the motor vehicle, or in any way lessens the ability of such person to perform his duties as such; or

Whoever willfully attempts to do any of the aforesaid acts—shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.

18 U.S.C. § 33.

The pattern of the section is to punish a person who

1. Willfully damages a motor vehicle in interstate commerce, with the prescribed intent of intentionally or recklessly endangering human life, or

2. Willfully damages a facility used in interstate commerce "with like intent" or

3. Willfully disables a driver or operator of such a vehicle, "with like intent."

If the first paragraph did not require willful damage to the vehicle plus the prescribed intent of intentionally or recklessly endangering human life, then the phrase "with like intent" in the two succeeding paragraphs would have no reference point and would be meaningless. It is apparent that the phrase "with like intent" refers to the threat to human life mentioned in the first paragraph.

### B. *Legislative History*

The legislative history confirms that "willful" damage to the vehicle is an essential element of the crime. The original Senate bill was designed to deal with willful damage to aircraft or aircraft facilities. *See* Senate Report, No. 1472, Feb. 8, 1956 (To accompany S. 2972). The House bill included "willful" damage to motor vehicles or motor vehicle facilities. *See* House Report No. 1895, Mar. 15, 1956 (To accompany H.R. 319), U.S.Code Cong. & Admin.News 1956, p. 3145. Both bills proscribed only "willful" conduct. The House then amended S. 2972 and it was sent to the Conference Committee of the two Houses. The final wording of the statute was developed by the Conference Committee. It was at this point that the wording of the first paragraph of section 33, here in issue, was developed. Every other provision of the Act pertaining to the damage of aircraft or motor vehicles proscribed only "willful" conduct. Nothing in the Conference Report indicates any intended departure from the "willful" requirement throughout the Act. There is no indication in the one instance relating to damage to motor vehicles that "recklessness" would be enough for a violation. *See* Conference Report No. 2287, June 8, 1956 (To accompany S. 2972), U.S.Code Cong. & Admin.News 1956, pp. 3145, 3150.

### III. DEFECTIVE INDICTMENT

■ The indictment failed to charge that the damage to the motor vehicle was "willful" and thus it failed to charge an

essential element of the crime. The Sixth Amendment requires that a defendant be informed of "the nature and cause of the accusation." The Supreme Court has stated that one of the protections which an indictment is intended to guarantee is measured by "whether the indictment contains the elements of the offense intended to be charged and sufficiently apprises the defendant of what he must be prepared to meet." *Russell v. United States*, 369 U.S. 749, 763, 82 S.Ct. 1038, 1046, 8 L.Ed.2d 240 (1962). We have held that "the indictment must allege the elements of the offense charged and the facts which inform the defendant of the specific offense with which he is charged." *United States v. Lane*, 765 F.2d 1376, 1380 (9th Cir.1985). The failure to include the element of willfulness thus renders the indictment constitutionally defective. A correct citation to the statute is not sufficient to compensate for the exclusion. *Givens v. Housewright*, 786 F.2d 1378, 1381 (9th Cir.1986); *United States v. Rojo*, 727 F.2d 1415, 1418–19 (9th Cir.1983).

This case is distinguishable from *United States v. Gray*, 809 F.2d 579 (9th Cir.1987), in that, there, the elements of the crime were properly alleged but, an incorrect statute was cited. The prosecutor had an open file policy, and the defendant was not prejudiced because all elements of the crime were charged in the indictment, and the defendant was not misled. *Id.* at 584. In this case, the indictment was fatally defective in that it failed to charge an essential element of the crime. Furthermore, the erroneous interpretation persisted throughout the trial and in the instructions to the jury. It was error to deny the motion to dismiss the indictment.

## IV. OTHER ISSUES

Because two other issues raised by the appellants may arise again in the event of a retrial, we address them here.

### A. *Admission of Codefendant Combs's Statement*

Before trial, Kurka filed a motion *in limine* seeking to prevent the Government from introducing certain testimony by Officer Gorman. Gorman related that Combs had stated to him that, while Combs was shooting at the bus, Kurka had told Combs to "Shoot it! Shoot it!" Kurka did not seek to exclude all of Combs's statements to Gorman but sought to exclude this particularly damaging statement. Neither defendant testified. The statements made by each in interviews with Officer Gorman were brought out in testimony by Officer Gorman. The district court instructed the jury that "[t]he testimony ... regarding statements made by each Defendant should be considered only against that Defendant which made the statement or which is alleged to have made the statement. You may not consider it when you are deciding whether or not the Government has proven beyond a reasonable doubt that the other Defendant has committed the crime."

■ The statement was properly admitted against Combs as part of his confession. The issue is whether the admission of this statement violated Kurka's rights as secured by the Confrontation Clause of the Sixth Amendment. In *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the Supreme Court held that the confrontation rights of one defendant were violated when his codefendant's confession was admitted at their joint trial, despite a careful limiting instruction. However, in *Dutton v. Evans*, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970), the Court held that an admission by a coconspirator who did not testify did not violate the Confrontation Clause because it possessed "sufficient indicia of reliability." The district judge in this case relied on four factors enumerated in *Dutton* and in our decisions in *Barker v. Morris*, 761 F.2d 1396, 1402–03 (9th Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 814, 88 L.Ed.2d 788 (1986), and *United States v. Monks*, 774 F.2d 945 (9th Cir.1985). The district judge balanced those factors, which are:

1) whether the statements are assertions of past fact, 2) whether the declarant had personal knowledge of the facts he related, 3) the possibility of faulty recollection, and 4) whether the circumstances suggest that the declarant misrepresented the defendant's role.

*Id.* at 952. He found the statements to be reliable. He acknowledged that the assertions were of past fact but noted that Combs was speaking from personal knowledge. Although Officer Gorman's interview was ten months after the incident, the district judge concluded that the risk of faulty recollection was not great because this would not likely be something Combs would forget. It is with the fourth factor that we have the most concern.

Since the time of trial of this case, the Supreme Court decided *Lee v. Illinois,* —— U.S. ——, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986), which sheds further light on this factor. The Court stated:

> The true danger inherent in this type of hearsay is, in fact, its selective reliability. As we have consistently recognized, a codefendant's confession is presumptively unreliable as to the passages detailing the defendant's conduct or culpability because those passages may well be the product of the codefendant's desire to shift or spread blame, curry favor, avenge himself, or divert attention to another. If those portions of the codefendant's purportedly "interlocking" statement which bear to any significant degree on the defendant's participation in the crime are not thoroughly substantiated by the defendant's own confession, the admission of the statement poses too serious a threat to the accuracy of the verdict to be countenanced by the Sixth Amendment.

*Id.,* 106 S.Ct. at 2064–65.

■ Although the statements of Combs and Kurka do interlock in many respects, they differ in one important respect. Combs's statement places particular emphasis on Kurka's participation other than as the driver. In this case, the inclination to spread the blame to Kurka appears too great to justify admission of the statement. We also conclude that the statement would be quite damaging and could not be harmless beyond a reasonable doubt, within the

meaning of *Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).

**B.** *Intoxication Defense to the Crime of Aiding and Abetting*

■ Kurka contended that he was entitled to an intoxication instruction. Kurka was convicted under 18 U.S.C. § 2,[1] of aiding and abetting Combs in his violation of 18 U.S.C. § 33. Because an aider and abettor is punished as a principal, "the proof must encompass the same elements as would be required to convict any other principal." *Hernandez v. United States,* 300 F.2d 114, 123 (1962). Since we hold in this opinion that willfulness is an element required to be proved under 18 U.S.C. § 33, this makes 18 U.S.C. § 33 a specific intent crime. Kurka, as an aider and abettor, must also be shown to have shared in the willfulness of the principal, Combs. *Hernandez,* 300 F.2d at 123.

■ In a prosecution for a specific intent crime, voluntary intoxication that precludes the formation of the requisite intent may be established as a defense. *United States v. Echeverry,* 759 F.2d 1451, 1454 (9th Cir. 1985). Thus, voluntary intoxication of a high degree may constitute a defense to the element of "willfulness." *Stenzel v. United States,* 261 F. 161 (8th Cir.1919). Therefore, Kurka would be entitled to such an instruction if the evidence of intoxication supports it.

REVERSED.

J. BLAINE ANDERSON, Circuit Judge, concurring and dissenting:

I respectfully dissent from Parts II and III of the majority opinion. It is, to me, a strained and overly technical reading of the plain language, meaning and structure of the statute.

The first paragraph of 18 U.S.C. § 33 should be read in the disjunctive and as creating two separate and quite distinct prohibited acts, one requiring proof of will-

---

**1.** 18 U.S.C. § 2 states:

a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

fulness and the other requiring only proof of reckless disregard. The meaning and facial structure seem plain. We are required to give the words of a statute their ordinary and everyday meaning, unless Congress prescribes a special meaning. *See, e.g., Malat v. Riddell,* 383 U.S. 569, 86 S.Ct. 1030, 16 L.Ed.2d 102 (1966). It seems to me to be unnecessary to engage in the grammatical gymnastics performed by the majority to reach a correct and just result in this case.

The first separate prohibited act is directed to willfully endangering the safety of anyone on board the bus. The second prohibited act is the damaging of a bus with reckless disregard for the safety of human life. The first part of the paragraph speaks of action directed at the individual and the second is speaking to action directed toward the bus, which may have the effect of endangering the safety of those on board. Congress was certainly free to adopt different qualities of *mens rea* for these separate and distinct acts.

The defendants were properly charged in the indictment with violation by reckless disregard of the second part of the paragraph, the jury was so instructed, and there was more than ample evidence to support the jury verdict.