**AMERICAN SAMOA GOVERNMENT, Plaintiff**

**v.**

**THOMAS SCHUSTER, Defendant**

High Court of American Samoa
Trial Division

CR No. 5-93

April 28, 1993

Before KRUSE, Chief Justice, MAILO, Associate Judge, and BETHAM,
Associate Judge.

Counsel: For Plaintiff, Donald M. Sheehan, Assistant Attorney General
For Defendant, Steven H. Watson

15

Defendant Thomas Schuster brought a number of pre-trial motions.

### A.  On Motion to Dismiss Count V of the Information

Defendant Thomas Schuster moves to dismiss Count V of the Information, on the grounds that Count V, Assault in the First Degree, is a lesser-included offense of Count IV, Murder in the Second Degree. As we stated in *American Samoa Government v. Moafanua*, 4 A.S.R.2d 33, 35 (1987) (quoting *Brown v. Ohio*, 432 U.S. 161, 166 (1977)), offenses are not inclusive so long as "each provision requires proof of a fact that the other does not."

However, a close reading of the relevant statutes, A.S.C.A §§ 46.3503 & 46.3520, reveals no element of the latter which is not present in the former.   A.S.C.A. § 46.3520, Assault in the First Degree, includes the inchoate offense of homicide and, as such, is necessarily a lesser-included offense of Murder in the Second Degree.

Defendant's Motion to Dismiss Count V of the Information is, therefore, GRANTED.

### B.  On Motion to Dismiss Count VI,<br>    Murder in the Second Degree

At the outset, we note that the defendant must be referring to Count IV of the Information; Count VI of the Information contains the charge of Assault in the First Degree.  Defendant Schuster asserts that the allegation of Count IV of the Information is not made with sufficient specificity, thus denying him adequate notice of the charge against him. He maintains that the term "recklessly," as used in A.S.C.A. § 46.3503 and in the Information, "carries with it no imputation of the conduct of Defendant which is alleged to constitute the basis of the offense charged."  We disagree.  Unlike the statute cited by the defendant in his motion, A.S.C.A. § 46.3503 does not contain the word "willfully"; therefore, the dilemma facing the Ninth Circuit in *U.S. v. Kurka*, 818 F.2d 1427 (9th Cir. 1987), is not before us.  The term "recklessly" is defined in A.S.C.A. § 46.3202(d).  Consequently, Count IV of the Information "sets forth 'fully, directly and expressly, without any uncertainty or ambiguity, . . . all the elements necessary to constitute the offense intended to be punished.'"  *Government of American Samoa v. Afamasaga*, 17 A.S.R.2d 145, 150 (1990).

Likewise, the defendant's assertion that Count IV of the Information is fatally flawed because it does not specify the location of the alleged unlawful activity leaves us unimpressed. It strikes us as an attempt to discover the prosecution's trial strategy, rather than a valid request for greater clarity or specificity. There are no double jeopardy issues involved, for the "entire record of the proceedings, and not just the information alone, may be referred to if there is a claim of double jeopardy with a subsequent prosecution." *Id.* The material already provided by the government is sufficient to put the defendant on notice of the charges against him.

Defendant's Motion to Dismiss Count IV of the Information is, therefore, DENIED.

### C. On Motion for Severance

Defendant seeks a separate trial. He asserts that if this is not done, he will be denied his constitutional right to cross-examine the other defendants, whose written statements will be introduced into evidence. He also claims that at least one other defendant is willing to testify in his favor, if severance is granted. If it is not, the witness/defendant will presumably exercise his Fifth Amendment right against self-incrimination, thus denying Schuster the benefit of this testimony.

We note at the outset that the decision to sever properly-joined defendants (and all parties have agreed that defendants were properly joined, per T.C.R.Cr.P. 8 (b)) is made at the sound discretion of the trial court. *See, e.g., United States v. Lane*, 474 U.S. 438, 449, n. 12 (1986). The United States Supreme Court has stated that a

> court should grant a severance under Rule 14 [the equivalent of T.C.R.Cr.P. 14] only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.

*Zafiro v. United States*, 61 U.S.L.W. 4147, 4148 (U.S. Jan. 26, 1993) (No. 91-6824).

We note that "[t]he 'great mass' of cases refuse to grant a severance despite the anticipated exculpatory testimony of a co-defendant." *United States v. Gay*, 567 F.2d 916, 919 (9th Cir. 1978). And we are not persuaded by the defendant's attorney's bare affidavit

17

that such a witness exists and will testify. Greater specificity should be provided in order for us to consider a severance on these grounds.

The defendant's *Bruton* concerns are a little more troubling. Fortunately, our decision to separate defendants Schuster and Fealofa'i from the other defendants eases our apprehensions at the possibility of conforming to the guidelines established by *Bruton* and its progeny. With only a single co-defendant, solutions such as redaction become much more tenable.

Taking into account all of the above considerations, the court agrees to spare the defendant the possible burden of being tried together with eight other defendants. Instead, as stated previously, he will be tried with only a single co-defendant, Eti Fealofa'i. The similarity of the charges aimed at these two defendants makes theirs a logical pairing.

The Motion for Severance is, therefore, GRANTED, on the conditions stated above.

### D. On Motion to Suppress Photographic Line-Up

Defendant's final motion, to suppress any and all information obtained as a result of the photographic line-up conducted by the Attorney General's Office, alleges that the method of identification of the defendant was unduly prejudicial. According to the Attorney General's investigator, Sam Matagi, the alleged victims were shown an array of twenty-one photographs. Of these photographs, snipped from driver's licenses, seven were of the defendants in the present case, four were of other safety officers present at either Kanana Fou or the O.M.V. police substation on the night in question, while the balance was a mix of safety officers not present that night and ordinary civilians. According to Matagi, on the reverse of each of the photographs was a number. When the alleged victims singled out one of the photographs, Matagi would note down the number, then correlate that number with the appropriate name. In some instances, the alleged victims knew the name of the officer already. Matagi testified that under no circumstances did he suggest to the alleged victims the names of the defendants or single out one particular photograph for special attention.

· The defendant alleges that this photographic line-up procedure was unduly suggestive and prejudicial. We disagree. In determining admissibility of identification testimony, "reliability is the linchpin." *Government of American Samoa v. Afamasaga*, 17 A.S.R.2d 145, 147

18

(1990) (quoting *Manson v. Braithwaite*, 432 U.S. 98, 114 (1977)). In *Afamasaga*, we rejected the defendant's allegation that a one-on-one confrontation was unduly suggestive, after noting that "even an impermissibly suggestive identification procedure does not render an identification inadmissible if, in the totality of circumstances, the identification was nonetheless reliable." *Id.* at 146. Factors which are to be considered in judging reliability include

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.

*Id.* at 147. The identification procedure used in the instant case is less susceptible to the charge of suggestiveness than the one challenged in *Afamasaga*. There is no reason to question either the reliability of the photo line-up or the sworn testimony of the Attorney General's investigator to the effect that he did not suggest the names of any of the defendants.

The defendant also attempts to argue that his photograph was unlawfully "seized" in violation of his Fourth Amendment rights. The photograph was obtained, as mentioned above, from a copy of the defendant's driver's license on file at the Office of Motor Vehicles. We find that there is no reasonable expectation of privacy in one's driver's license, and thus the argument is without merit.

The Motion to Suppress the Photographic Line-Up is, therefore, DENIED.

It is so ordered.

It is further ordered that trial in this matter will be held as previously scheduled.